UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
SHERRY MARTIN                 :    Civ. No. 3:18CV00914(SALM)
                              :
v.                            :
                              :
ANDREW M. SAUL,               :    August 16, 2019
COMMISSIONER, SOCIAL          :
SECURITY ADMINISTRATION[1]    :
                              :
------------------------------x
```

**RULING ON CROSS MOTIONS**

Plaintiff, Sherry Martin ("plaintiff"), brings this appeal pursuant to §205(g) of the Social Security Act ("the Act"), as amended, seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand [Doc. #21]. Defendant has filed a motion for an order affirming the decision of the Commissioner [Doc. #25]. The parties have filed a joint statement of facts. See Doc. #21-2.

For the reasons set forth below, plaintiff's Motion to Reverse or Remand **[Doc. #21]** is **GRANTED**, to the extent that it

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

1

seeks remand for further proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **DENIED**.

I. **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on December 5, 2014, alleging disability beginning July 2, 2009. See Certified Transcript of the Administrative Record, Doc. #11 and attachments, compiled on June 30, 2018, (hereinafter "Tr.") at 218. Plaintiff's application was denied initially on January 21, 2015, see Tr. 94-103, and upon reconsideration on October 13, 2015, see Tr. 106-23.

On May 2, 2017, plaintiff, represented by non-Attorney representative David McCluskey,[2] appeared and testified before Administrative Law Judge ("ALJ") John Aletta. See Tr. 53-81. Vocational Expert ("VE") Susan Gaudet also testified at the hearing. See Tr. 81-93. On June 1, 2017, the ALJ issued an unfavorable decision. See Tr. 21-36. On April 18, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's June 1, 2017, decision the final decision of the Commissioner. See Tr. 1-4. The case is now ripe for review under 42 U.S.C. §405(g).

---

[2] Plaintiff is now represented by Attorney Olia M. Yelner. See Doc. #21 at 1.

2

## II. **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Second, the court must decide whether the determination is supported by substantial evidence. See id. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

3

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). It is well established that "an ALJ's credibility determination is generally entitled to deference on appeal." Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013); see also Kessler v. Colvin, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) ("A federal court must afford great deference to the ALJ's credibility finding, since the ALJ had the opportunity to observe the claimant's demeanor while the claimant was testifying." (citation and internal quotation marks omitted)); Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore

can be reversed only if they are patently unreasonable." (citation and internal quotation marks omitted)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013).

## III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments

5

must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").[3]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has

---

[3] Some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 2:17CV04524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

> such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" ("RFC") is what a

7

person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV. **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 36. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date of July 2, 2009, through her last insured date of March 31, 2015. See Tr. 26. At step two, the ALJ found that plaintiff had the severe impairments of "degenerative disc disease of the cervical spine, status post cervical spine discectomy and fusion; mood disorder; degenerative disc disease of the lumbar and thoracic spine; lumbar spine scoliosis; chronic pain

8

syndrome." Tr. 26-27 (citations omitted).

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 27. The ALJ specifically considered Listings 1.04 and 12.04. See Tr. 27-29. Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she used a cane frequently for walking. She could occasionally reach overhead with her left and right arm. She could climb ramps and stairs frequently; never climb ladders, ropes or scaffolds; balance frequently; stoop occasionally; kneel frequently; crouch frequently; crawl occasionally. She could never work at unprotected heights. She could perform repetitive work or continuously perform the same work, according to set procedures, sequence, or pace. She could have occasional contact with the public, and could not perform tasks requiring teamwork with coworkers. She could tolerate occasional changes in her work setting and work procedures and can set simple goals.

Tr. 29.

At step four, the ALJ concluded that plaintiff was unable to perform any of her past relevant work. See Tr. 34. At step five, and after considering the testimony of the VE as well as plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. See Tr. 35-36.

## V. DISCUSSION

Plaintiff alleges that the ALJ erred in multiple ways. See

9

generally Doc. #21-3. The Court finds that the ALJ erred at step five by failing to resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and the testimony of the VE; the Court does not address plaintiff's other alleged claims of error.

Plaintiff argues, inter alia, that the physical requirements for the jobs identified by the ALJ, as outlined in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), a companion piece to the DOT, exceed the limitations set forth in plaintiff's RFC.[4] See Doc. #21-3 at 18-20.

At the hearing, the ALJ posed a hypothetical question to the VE. See Tr. 85. The ALJ described the limitations set forth in the RFC that was ultimately imposed, and asked the VE whether jobs would be available for a person with those restrictions, at plaintiff's age, education, and experience. See Tr. 85-86. In response, the VE identified three jobs that plaintiff could perform with the restrictions noted: Laundry Folder, DOT 369.687-018; Assembler Plastic Hospital Products, DOT 712.687-010; and Ticket Taker, DOT 344.667-010. See Tr. 35.

The VE's testimony that plaintiff could perform these jobs

---

[4] Plaintiff also challenges the substance of the ALJ's RFC determination. See Doc. #21-3 at 14-18. The Court does not reach that issue.

conflicted with the provisions of the DOT/SCO. According to the DOT/SCO, each of the identified jobs requires <u>frequent</u> reaching. <u>See</u> Doc. #21-1 at 18-19; Dep't of Labor, <u>SCO</u> 313 (1993) (Laundry Folder, DOT 369.687-018); <u>id.</u> at 288 (Assembler Plastic Hospital Products, DOT 712.687-010); <u>id.</u> at 369 (Ticket Taker, DOT 344.667-010). The RFC, however, limits plaintiff to <u>occasional</u> overhead reaching. <u>See</u> Tr. 29.

The conflict between the VE's testimony and the SCO's description of these jobs was obvious, and triggered the ALJ's duty to identify and resolve the conflict.[5] This duty was recently addressed by the Second Circuit:

> A 2000 Social Security Administration Policy Interpretation Ruling (the "Ruling")[, SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000),] governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations. Under the Ruling, the Commissioner relies primarily on the Dictionary for information about the job's requirements but may also use vocational experts to resolve complex vocational issues. If the Commissioner does consider the testimony of such experts, however, she must be alert to the possibility of apparent unresolved conflicts between the testimony and the Dictionary. In light of this possibility, the Ruling tasks the Commissioner with <u>an affirmative responsibility to ask about any possible conflict, and</u>

---

[5] "[G]iven the DOT's significance as a source of jobs data regularly relied on by the ALJ, it seems to us quite likely that the ALJs are familiar with and have ready access to it. This seems especially likely since the Social Security Administration requires the ALJs to take administrative notice of the DOT. Any apparent conflict, then, between the VE's testimony and DOT data is likely not something the ALJ will need much help in identifying." <u>Washington v. Comm'r of Soc. Sec.</u>, 906 F.3d 1353, 1365 (11th Cir. 2018).

11

<u>to elicit a reasonable explanation for any such conflict before relying on the vocational expert's testimony.</u>

<u>Lockwood v. Comm'r of Soc. Sec. Admin.</u>, 914 F.3d 87, 91 (2d Cir. 2019) (citations and quotation marks omitted) (emphasis added).[6]

The Commissioner does not argue that there was no conflict between the VE's testimony and the SCO, or that the ALJ did not have a duty to identify any such conflict. See Doc. #25-1 at 18. Rather, the Commissioner attempts to distinguish <u>Lockwood</u>, asserting that the ALJ in this matter adequately fulfilled his obligations:[7]

> In [<u>Lockwood</u>], the ALJ merely asked if the vocational expert's testimony was consistent with the DOT and the expert responded that it was. [<u>Lockwood</u>, 914 F.3d] at 93. Here, the ALJ inquired further, asking the vocational expert whether the DOT covered all the limitations in the hypothetical, and the VE testified that it did not (Tr. 87-89). The vocational expert testified that she based her testimony not only on the DOT, but on her professional experience, which included 28 years of working in vocational rehabilitation, placing individuals in these same jobs, and seeing the jobs performed (Tr. 87-89). Where a vocational expert's testimony is based on her professional experience and clinical judgment and is not undermined by any evidence in the record, the ALJ is entitled to rely on it. <u>McIntyre v. Colvin</u>, 758 F.3d 146, 152 (2d. Cir. 2014).

---

[6] The <u>Lockwood</u> court stated: "This opinion's references to the <u>Dictionary</u> also include where relevant the <u>Dictionary</u>'s companion publication, the <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u>." <u>Lockwood</u>, 914 F.3d at 90 n.2.

[7] <u>Lockwood</u> was decided by the Second Circuit after plaintiff filed her motion, but before the Commissioner filed his.

12

Id. The Commissioner's argument fails, for several reasons.

First, the Court notes that the ALJ and the VE did not, in fact, discuss the conflict at issue here, that is, reaching. Rather, in response to the ALJ's inquiry, the VE stated that the DOT did not address the non-exertional limitations set by the RFC. No mention was made of the reaching restrictions. The relevant colloquy was as follows:

> Q Okay. Is your testimony consistent with the DOT regarding all of this?
> A Yes, Your Honor.
> Q Okay. Does the DOT cover, or does the DOT specifically address the limitations built into this hypothetical <u>regarding occasional contact with the public and no tasks requiring team work with coworkers, and tolerating occasional changes in work setting and work procedures, and setting simple work goals</u>? Does the DOT --
> A No, Your Honor.
> Q Okay. What do you base that, your testimony upon <u>with regard to those limitations</u>?
> A <u>I based it on professional experience.</u>
> Q Okay. And your professional experience includes how many years of doing what?
> A Twenty-eight years of working in vocational rehabilitation, placing individuals in these same jobs.
> Q Okay. Hold on. And have you actually seen these jobs performed, ma'am?
> A Yes, Your Honor.
> Q And do you draw upon that experience in answering this hypothetical?
> A Yes, I do.
> Q Other than the matters that are, that are based upon your professional experience, is <u>all the rest</u> of your testimony today consistent with the DOT?
> A <u>Yes, it is.</u>

Tr. 86-87 (emphases added). Neither the ALJ nor the VE identified the conflicts between the DOT/SCO reaching requirements and the RFC. Thus, the inquiry made could not

13

possibly satisfy the Commissioner's obligation as to reaching.

Second, the inquiry that was made would not even satisfy the Commissioner's obligation as to non-exertional limitations, because more is required than simple inquiry. In Lockwood, the District Court[8] had held that any conflict between the VE's testimony and the DOT "was reconciled because the vocational expert's testimony indicates that she based her opinion on her own experience observing the performance of the identified jobs." Lockwood N.D.N.Y. decision, 2017 WL 2656194, at *5. This is, essentially, the argument the Commissioner adopts here. But the Second Circuit expressly rejected that reasoning, in reversing the District Court in Lockwood:

> [W]e decline to follow the District Court in inferring that [the VE's] personal observations of the jobs about which she testified led her to conclude that those jobs do not entail overhead reaching. While [the VE's] observations may well explain the apparent discrepancy between her testimony and the Dictionary, the fact remains that it is the Commissioner's responsibility to obtain a reasonable explanation for any such discrepancies, and not this Court's obligation to concoct one post hoc.

Lockwood, 914 F.3d at 93 n.4 (citations and quotation marks omitted). "The Second Circuit held that teasing out such details and discrepancies 'is precisely why the Commissioner bears an "affirmative responsibility" to ask about "any possible conflict

---

[8] The District Court opinion is Lockwood v. Comm'r of Soc. Sec., No. 6:16CV0648(CFH), 2017 WL 2656194 (N.D.N.Y. June 20, 2017) (herein, the "Lockwood N.D.N.Y. decision").

between [vocational expert] evidence and information provided in'" the DOT." Haman v. Berryhill, No. 3:17CV1752(VAB), 2019 WL 1383439, at *16 (D. Conn. Mar. 27, 2019) (quoting Lockwood, 914 F.3d at 93 (quoting SSR 004p)) (emphasis added, alteration in original). Accordingly, the Court rejects the Commissioner's argument that Lockwood is meaningfully distinct from the instant case.

The Court thus turns to Lockwood, and the precedent on which it relies. Both the Circuit Court and District Court opinions in Lockwood describe in some detail the underlying ALJ decision, and the testimony of the VE.[9]

The ALJ found that Mr. Lockwood had the residual functional capacity ("RFC") to perform "a full range of light work" with a variety of exceptions, including, as relevant here: "[T]he claimant must avoid all overhead reaching tasks and constant upper extremity reaching, handling, and fingering tasks[.]" Lockwood N.D.N.Y. decision, 2017 WL 2656194 at *1–2. At the hearing, the ALJ solicited testimony from the VE, who "offered her opinion that a person of Lockwood's age, education, and

---

[9] Due to the sensitive nature of the information contained in the administrative records of Social Security proceedings, those records generally are not publicly accessible. Accordingly, the Court is unable to cite directly to the transcript of the Lockwood administrative hearing. Instead, the Court relies on the descriptions of those proceedings, contained in the opinions of the District and Circuit Courts.

15

experience could perform the physical tasks associated with three specific jobs ... as long as he retained the ability to perform light work that did not require any overhead reaching." Lockwood, 914 F.3d at 89. The ALJ found that there were jobs that Mr. Lockwood could perform, and thus denied benefits.

On appeal to the District Court, and again on appeal to the Circuit Court, Mr. Lockwood argued that the ALJ's decision was in error because the VE "had identified three jobs capable of being performed by a person who cannot reach overhead, but that the [DOT's] descriptions of these jobs state without qualification that each requires 'reaching.'" Lockwood, 914 F.3d at 90.

The Second Circuit stated:

> Our analysis begins and ends with Lockwood's argument that the Commissioner's finding that he is capable of performing the three jobs identified by [VE] Heller was not based on substantial evidence. In Lockwood's view, the evidence upon which the Commissioner relied in determining what physical demands those jobs entail — Heller's testimony — cannot constitute substantial evidence because it contains an apparent, unresolved conflict with the [DOT]. We agree and therefore conclude that the District Court erred in declining to set aside the Commissioner's benefits denial.

Lockwood, 914 F.3d at 91. Because Lockwood is relatively recent, and in light of the Commissioner's position in this matter, some attention to the details of Lockwood is warranted.

The conflict in Lockwood – as here – relates to reaching. "[A] 1985 Social Security Program Policy Statement defines

16

'reaching' as 'extending the hands and arms <u>in any direction</u>,' SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) (emphasis added)[.]" <u>Lockwood</u>, 914 F.3d at 92. Thus, where as here, the jobs identified by a VE are defined as requiring reaching, "a claimant with a restriction on overhead reaching" may not be able to perform the jobs. <u>Id.</u> "Testimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching,' then, creates at least an <u>apparent</u> conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." <u>Id.</u>

At step five of the sequential analysis performed by an ALJ, the Commissioner has "the burden of showing that [a claimant] is actually capable of performing" jobs identified by the VE. <u>Id.</u> at 93. "If the Commissioner wished to rely on [the VE's] expert testimony to carry that burden, the Ruling makes clear that she was obliged to identify and resolve the <u>apparent</u> conflict between that testimony and the [DOT], even if there is a chance that, upon inquiry, no <u>actual</u> conflict would have emerged." <u>Id.</u> (footnote omitted). Notably, the <u>Lockwood</u> Court observed that it was not enough for the ALJ to inquire regarding any conflict; any such conflict <u>must be resolved</u>. <u>See</u> <u>id.</u>

The Second Circuit relied, in <u>Lockwood</u>, on an Eleventh Circuit case, <u>Washington v. Comm'r of Soc. Sec.</u>, 906 F.3d 1353

(11th Cir. 2018). In Washington, the plaintiff argued "that SSR 00-4p imposes a robust duty on the ALJs to independently identify and resolve VE-DOT conflicts." Washington, 906 F.3d at 1361. The Eleventh Circuit, in Washington, closely examined the relevant SSR and related case law, concluding: "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." Id. at 1363 (emphasis added).

It is the need for resolution of any potential conflict that the Commissioner's position in this matter ignores. The Second Circuit's conclusion in Lockwood makes it clear that an ALJ must not only identify and inquire into any apparent conflicts, but must actually resolve such conflicts:

> In the end, the Commissioner failed to reconcile [the VE's] testimony that a person with an overhead reaching limitation can perform the three jobs at issue here with the [DOT's] indication that all three jobs require "reaching." [The VE's] testimony cannot, then, represent substantial evidence capable of demonstrating that Lockwood can successfully perform work in the national economy. It may well be that the apparent conflict between [the VE's] testimony and the [DOT] is susceptible to easy resolution—if, for example, the reaching involved in the three jobs at issue consists exclusively of lateral or downward reaching. But it is not our role to speculate as to how or whether that conflict might have been resolved had the Commissioner carried out her responsibility to probe such matters. Instead, we must reverse and remand for further proceedings so that the Commissioner may have the opportunity to conduct the requisite inquiry in the first instance.

Lockwood, 914 F.3d at 94 (emphasis added). The ALJ is required

18

to resolve conflicts at the administrative level; the Court cannot conduct that inquiry. Where the ALJ does not fully discharge his duty to resolve any apparent conflicts between the VE's testimony and the DOT, remand is appropriate. Cf. Galarza v. Berryhill, No. 3:18CV00126(SALM), 2019 WL 525291, at *16 (D. Conn. Feb. 11, 2019).

**VI.  CONCLUSION**

"[T]he Commissioner's denial was based on evidence that contained an apparent conflict with the [DOT's] authoritative guidance, and [] the Commissioner failed to take any steps to explore or resolve that conflict." Lockwood, 914 F.3d at 94. Remand is therefore required so that the Commissioner may "conduct the requisite inquiry in the first instance." Id.

On remand, the ALJ shall conduct a new hearing on plaintiff's application. The ALJ shall not be limited by any of his prior findings. The Court does not reach the merits of plaintiff's remaining arguments. On remand the Commissioner shall address the other claims of error not resolved herein.

In addition to addressing the other claims of error raised by plaintiff, on remand, the Commissioner shall also resolve the question of whether plaintiff engaged in substantial gainful activity "from October 2012 through January 2014, [when she earned] a gross amount of $120,000 per year." Tr. 26.

The Court offers no opinion on whether the ALJ should or

will find plaintiff disabled on remand.

For the reasons set forth herein, plaintiff's Motion to Reverse or Remand **[Doc. #21]** is **GRANTED**, to the extent that it seeks remand for further proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 16th day of August, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE